JOHN S. FULLER, trustee, *vs.* NEW YORK FIRE INSURANCE COMPANY.

SAME *vs.* FARMERS' FIRE INSURANCE COMPANY.

SAME *vs.* FIREMEN'S INSURANCE COMPANY.

SAME *vs.* TRADERS' INSURANCE COMPANY.

SAME *vs.* GREENWICH INSURANCE COMPANY.

SAME *vs.* INDIA MUTUAL INSURANCE COMPANY.

SAME *vs.* MILLERS' AND MANUFACTURERS' INSURANCE · COMPANY.

Berkshire.    March 4, 1903. — June 19, 1903.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Bankruptcy. Insurance, Fire. Words,* "Condition."

An insurance policy on property of a bankrupt, containing the usual clause requiring the written consent of the insurer in case of assignment, is property which prior to the filing of the petition the bankrupt could have transferred within the meaning of § 70 of the bankruptcy act of 1898, and vests in the trustee in bankruptcy upon his appointment and qualification.

One holding a fire insurance policy filed a voluntary petition in bankruptcy and was adjudicated a bankrupt. A week later a receiver of his estate was appointed and afterwards on the same day the insured property was destroyed by fire. Six weeks later a trustee in bankruptcy was appointed who brought an action on the policy. The defendant contended that the bankrupt had ceased to have an insurable interest in the property at the time of its loss, and also that by the petition and adjudication the property was assigned without the assent of the insurer. *Held,* that the title to the property remained in the bankrupt until its destruction by fire when a right of action vested in the bankrupt which passed to the trustee upon his appointment and qualification.

A rider on a policy of fire insurance in the Massachusetts standard form contained the following provision: "It is understood and agreed that the Automatic Sprinkler System is in complete working order and in further consideration of reduction in rate it is hereby made a condition of this policy that the assured shall use due diligence that such equipment shall continue to be maintained in complete working order during the full term of this insurance." *Held,* that this stipulation was neither a warranty nor a condition precedent, but was a representation, a breach of which would be a matter of defence to be shown by the insurance company.

SEVEN ACTIONS OF CONTRACT by the trustee in bankruptcy of the estate of Charles E. Callender, against seven different

insurance companies, each upon a policy of insurance against fire in the Massachusetts standard form with the rider quoted by the court. Writs dated October 8, 1900.

In the Superior Court the cases were tried before *Fox*, J. In each case the jury returned a verdict for the plaintiff. The defendants alleged exceptions.

Among the defendants' requests for rulings refused by the judge were the following, which are referred to by the court but not stated: " 2. The filing of the petition in bankruptcy by Mr. Callender and the adjudication thereon constituted a sale of the insured property within the meaning of the policy which rendered the policy void and the plaintiff is not entitled to recover. 3. The property insured was sold during the term of the policy and without the assent in writing or in print of the defendants and the policy was thereby rendered void and the plaintiff cannot recover. 4. The filing of the petition in bankruptcy by Mr. Callender and the adjudication thereon operated to divest him of all insurable interest in the property as of the date of the adjudication, so that, at the time of the loss, Mr. Callender suffered no damage, and had no right of action against the defendants which could pass to the plaintiff, and the plaintiff is not entitled to recover. 5. The policy did not insure the interest of the plaintiff in the property; at the time of the fire Mr. Callender's interest had wholly ceased; there was no interest in the property, other than that of the mortgagee, which was covered by the insurance and the plaintiff is not entitled to recover for the mortgagee. 6. The policy was assigned before the alleged loss and without the assent in writing or in print of the defendants, and the assignment rendered the policy void and the plaintiff cannot recover. 7. The filing of the petition in bankruptcy by Mr. Callender and the adjudication thereon operated as an assignment of the policy, as of the date of the adjudication; to this assignment the defendants never assented in writing as provided in the policy thereby rendered void and the plaintiff cannot recover."

The other requests for rulings refused by the judge are stated or explained in the opinion.

*F. W. Brown*, (*G. L. Huntress* with him,) for the defendants.

*A. C. Collins*, for the plaintiff.

BARKER, J.   These actions are in contract upon policies of fire insurance issued to one Callender upon his mill.   They were tried together and with a verdict for the plaintiff in each case.   On March 2, 1900, Callender filed a voluntary petition in bankruptcy and was adjudicated a bankrupt.   On March 10, 1900, at 12.30 o'clock P. M. a receiver of the bankrupt's estate was appointed and at 7.45 P. M. on the same day the insured property was destroyed by fire.   On April 23, 1900, the plaintiff was appointed trustee in bankruptcy, and thereafter brought the actions.

One exception was to the introduction of evidence.   Although this exception is stated in the defendants' brief it has not been argued by them and we treat it as waived.

Sixteen requests for rulings to the jury were made by the defendants, and the other exceptions relate to the requests.

The policies were of the Massachusetts standard form, and upon each was a rider containing the following clause : " It is understood and agreed that the Automatic Sprinkler System is in complete working order and in further consideration of reduction in rate it is hereby made a condition of this policy that the assured shall use due diligence that such equipment shall continue to be maintained in complete working order during the full term of this insurance."

The defendants contended that they were not liable because the terms of this clause had not been complied with ; that the burden of showing compliance with both parts of the clause was upon the plaintiff.   They also relied upon alleged breaches of the usual conditions against failure fairly to represent the material facts and circumstances, against change of situation or circumstances affecting the risk, and against a sale of the property or an assignment of the policy, and the requests for instructions were addressed to the questions arising under these various defences.

The arguments of the defendants' brief are embraced in two classes, first those founded upon the effect of the bankruptcy proceedings upon the contracts evidenced by the policies, and second those founded upon the rider concerning the sprinkler system.

One contention is that neither the policies nor any right of

action upon them passed to the plaintiff as trustee in bank-
ruptcy. But the policies were in their nature assignable and
while failure to obtain the written consent of the insurers might
defeat the policies it would not render their transfer invalid.
*Hewins* v. *Baker*, 161 Mass. 320. Therefore they were prop-
erty which prior to the filing of the petition the bankrupt could
have transferred, and so were a kind of property enumerated in
§ 70 of the bankruptcy act as vested by operation of the law
in the trustee upon his appointment and qualification. The
proviso of the section dealing with insurance policies which
have a cash surrender value payable to the bankrupt, his estate
or personal representatives is an implication that all insurance
policies are property which it is the intention of the section shall
vest in the trustee. But whether the policies passed to the
plaintiff would be immaterial if the fire created a chose in action
to recover for the loss and if such right of action passed to the
plaintiff.

The next contention is that upon the adjudication that
Callender was a bankrupt he ceased to have an insurable inter-
est in the property. But neither the policies nor the insured
property vested in the trustee at the time of the adjudication.
The insured property never vested in the trustee because it was
not in existence at the time of his appointment and qualification.
The title to it remained in Callender until it was destroyed by
fire, as also did the title to the policies. Hence the destruction
of the property changed or ripened the conditional obligation of
the insurers into a fixed obligation to pay the amount of indem-
nity stipulated for in the policy. To hold that this ripening of
the obligation made it after acquired property which would not
vest in the trustee, but which the bankrupt could hold as his
own, would be as absurd as to hold that if goods which he had
at the time of adjudication were converted by a stranger to his
own use between the time of the adjudication and the appoint-
ment of the trustee the right to maintain trover for their value
would not pass to the trustee, but might be enforced by the
bankrupt as after acquired property.

If an unmatured obligation on which there was no right of
action at the date of adjudication should mature between it
and the appointment of the trustee the right of action upon

it would be one which did not exist until after the adjudication, but there can be no doubt that it would vest in the trustee. In all such cases the new right of action may be compared to a fruit which has grown and ripened during the period of transfer and which being upon the branch at the moment when the property vests in the new owner becomes his. The statute is to be construed in view of its general purpose of applying the property and rights of debtors for the benefit of their creditors, and while the debtor's property vests as of the date of the adjudication it yet has the incidents which have become attached to it up to the time when it vests in the trustee upon his appointment and qualification. Even if the change wrought in the ownership of the policy will, if the insurer does not assent in writing to the transfer, make the policy void as to future losses, it does not make void the matured obligation to pay for a loss incurred before the time when the ownership of the policy was changed. The same considerations dispose of the contention that the adjudication and the appointment of a receiver before the fire violated the right of the insurer to have the insured property cared for by Callender. He was still the owner of the property and in its actual control and the rights and obligations of the receiver tended to add to and not to diminish the care and oversight of the insured property and could in no way increase the risk or alter it to the detriment of the insurers. As to the supposed interest of the trustee to turn the insured property into money by getting its value from the insurers, it is enough to say that up to the time of the fire there was no trustee. Nor was the interest of Callender in the insured property after the adjudication and up to the time of the fire a new or different interest from that which he had up to the time of the adjudication. No change of title was effected until the appointment and qualification of the trustee, and there was until then no change in the legal relation of Callender to the property.

Nor is there any impossibility of compliance with the provisions for proof of loss, or anything resulting from the bankruptcy of Callender which works a release of the insurers from their obligation because of those provisions. If the insured dies at the same time when the loss occurs no proof of loss can be

made by him personally, but such a death would not discharge the insurer from liability. In the present cases the bill of exceptions states that proofs of loss were duly filed by the plaintiff.

As the insured property was destroyed by fire before the bankrupt's estate became vested in the trustee there was no sale or transfer of it, during the term of the policy and without the assent of the insurers and so no defence under the conditions of the policies relating to such sales, and no alteration of the situation or circumstances affecting the risk growing out of the bankruptcy. These considerations show that there was no error in the refusal to give the second, third, fourth, fifth, sixth and seventh requests.

The exception to the refusal to give the eighth request that the plaintiff was not entitled to recover interest before the date of the writs has not been argued and we treat it as waived.

Of the requests concerning the rider and the sprinkler system the defendants have argued only those relating to the eleventh and twelfth requests. The thirteenth request was given in terms and the fourteenth and sixteenth were covered by the charge in a manner sufficiently favorable to the defendants. As the exceptions relating to the ninth, tenth, fourteenth, fifteenth and sixteenth requests have not been argued by the defendants we consider those exceptions as waived.

The eleventh request was as follows: "The burden is on the plaintiff to show

*a.* That the sprinkler system was in complete working order at the time the policy was taken out.

*b.* That he used due diligence to maintain the sprinkler system in complete working order during the entire time from the date of the policy to the time of the fire."

The judge gave the instruction that the burden of proof was upon the plaintiff to show that the system was in complete working order at the time the policy was taken out, but refused the second clause of the request and instructed the jury that the burden was on the defendants to show that the plaintiff failed to use due diligence to maintain the system in complete working order after the policy had taken effect.

"There is undoubtedly some difficulty in determining by any

simple and certain test what propositions in a contract of insurance constitute warranties." Shaw, C. J. in *Daniels* v. *Hudson River Ins. Co.* 12 Cush. 416, at page 423. The truth of or compliance with a warranty on the part of the assured is a condition precedent to his right to recover which the burden is upon him to prove in an action upon the policy. *McLoon* v. *Commercial Ins. Co.* 100 Mass. 472, 474. *Campbell* v. *New England Ins. Co.* 98 Mass. 381, 389, 390.

In the case last cited it is said that whether a proposition is a warranty " will depend upon the form of expression used, the apparent purpose of the insertion, and sometimes upon the connection or relation to other parts of the instrument." As in other cases involving the construction of contracts the language used is to be considered in view of the general purpose of the contract and of the situation of both -parties. As was said in *Daniels* v. *Hudson River Ins. Co., ubi supra,* " the leaning of all courts is, to hold such a stipulation to be a representation, rather than a warranty, in all cases, where there is any room for construction ; because such construction will, in general, best carry into effect the real intent and purpose which the parties have in view, in making their contract."

In the present instance it is to be noted that the rider, the language of which was chosen by the insurer, does not contain the word " warrant " or " warranty." The precise word used is " condition," and in the body of the policy were other stipulations or conditions, none of which were technical warranties. It is also to be noted that the language of the rider cannot be taken with absolute literalness. It begins by stating that it is " agreed " that the system is in complete working order. An agreement assumes that both parties assert to be true the fact stated as agreed. Yet the defendants did not intend to assert or agree on their part that the system was then in order. Again, the full term of the insurance was one year. A loss might happen during the first day of the term, and it would be absurd to contend that if so the insured could not recover for it without showing that he had used due diligence to keep the system in order during the remainder of the year.

While the rider makes due diligence on the part of the insured to maintain the system in complete working order a con-

dition of the policy, it does not say in express words that the use of such diligence shall be a warranty or a condition precedent, or a condition differing in legal character from the other conditions so called in the policy. The most important effect of construing the clause in question as a warranty, inasmuch as the insurers cannot be made to pay for a loss if the insured fails to use due diligence, is upon this very question of the burden of proof. Assuming that both parties knew the law upon this question, an assumption easily made as to the insurers at least, we think it unlikely that the insurers would demand that the insured should be bound to prove as a condition precedent to any right to recover that he had used due diligence in the particular referred to, or that the insured would agree to assume that unusual burden. Upon the whole we think that the parties did not intend the rider either as a warranty or a condition. precedent to the right to recover for a loss but as a condition similar in effect to the other expressed conditions a breach of which the insurer might set up in defence and prove.

If so, the refusal to give the second clause of the eleventh request, and the instruction given in lieu of it was right.

The next exception is to the refusal to give the instruction that there was no evidence that the sprinkler system was in complete working order when the policy was issued.* The policies to which the request referred were issued at different dates in the months of June, August and December before the occurrence of the fire. Without stating at length the evidence, it is enough to say that there was evidence that the system had been installed and put in complete working order before the date of the earliest policy, and that it was inspected and repaired with such frequency as to justify a finding that it was in complete working order at the date when each policy was issued.

The defendants' brief contends that whether reasonable diligence had been exercised was a question of law and that the judge erred in submitting it to the jury. To what exception stated in the bill this contention is addressed it would perhaps be difficult to say. Assuming that it is open upon the bill, the doctrine of our court is that where the evidence is "doubtful or

---

* The twelfth request.

conflicting, and where, upon the view of it most favorable to the plaintiff, the court would find due diligence" the case may be left to the jury. *Parker* v. *Middlesex Mutual Assur. Co.* 179 Mass. 528, 532. Examining the evidence as stated in the bill we think the judge properly could submit the question to the jury.

The remaining exception is to the refusal to give the first request, that upon all the evidence the plaintiff cannot recover.

The defendants' brief contains no argument expressly directed to this exception, and none which we think makes in support of it except those which we have considered and disposed of in dealing with the other exceptions. Certain statements are made in the defendants' brief as to a payment by the insurers of the mortgage upon the insured property, which do not appear in the bill of exceptions and concerning which it does not appear that any question was raised at the trial.

*Exceptions overruled.*